IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| George Edward Mitchum, | ) | Civil Action No. 4:12-1686-TLW |
| | ) | Cr. No. 4:08-1174 |
| Petitioner, | ) | |
| vs. | ) | ORDER |
| The United States of America, | ) | |
| Respondent. | ) | |

This matter comes before the Court for consideration of the pro se motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by the Petitioner, George Edward Mitchum (hereinafter "Petitioner" or "Defendant").

**PROCEDURAL HISTORY AND BACKGROUND**

On November 18, 2008, a federal grand jury returned a five-count indictment charging Petitioner with three counts of possessing with intent to distribute a quantity of cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)©; with one count of knowingly using and carrying a firearm, during and in relation, and possessing a firearm in furtherance of, a drug trafficking crime in violation of Title 18, United States Code, Section 924(c)(1)(A); and with one count of being a felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2), and 924(e). (Doc. # 15) A superseding indictment was returned on August 4, 2009, which added a conspiracy count to the original indictment, alleging Petitioner conspired with others to possess with intent to distribute and distribute 50 grams or more of cocaine base, 500 grams or more of cocaine, and a quantity of marijuana in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(D), and 846. (Doc.

1

# 88). On September 4, 2009, the government filed an Information pursuant to 21 U.S.C. §851. Petitioner proceeded to trial on September 14, 2009.

The Government indicates that this prosecution was the result of a joint federal and state investigation into drug trafficking in Williamsburg County, South Carolina. Presentence Sentence (PSR) at p. 6. On October 11, 2008, Lieutenant Wayne McFadden of the Williamsburg County Sheriff's Office (WCSO) stopped a 2001 Ford truck driven by Petitioner. Lieutenant McFadden observed marijuana on the center console and ordered Petitioner out of the truck. Id. During a struggle with the officer, Petitioner dumped the contents of a bag onto the floor of the truck. As a result, a powdered substance was spread throughout the vehicle. Id. Subsequently, officers from WCSO retrieved an amount of cocaine from the truck's floorboard, which was later tested and confirmed to be 7.63 grams of powder cocaine. Id. A few days later, a search warrant was executed on Petitioner's residence, where officers seized a quantity of cocaine, a loaded pistol and cash. PSR at p. 9. At trial, numerous witnesses testified to Petitioner's history of drug dealing and use of firearms. PSR at pps. 6-15. Trial testimony indicated Petitioner was a drug dealer, cooked cocaine into crack, had many customers, engaged in buy-sell transactions involving significant amounts of drugs, and kept firearms to protect himself and his drugs. PSR at pps. 6-15. Certain trial witnesses gave testimony regarding Petitioner's involvement in a shooting at the home of a WCSO law enforcement officer. PSR at pps. 12-13. Petitioner testified in his own defense, claiming the witnesses against him had lied. PSR at pps. 13-14. Petitioner also admitted in his testimony that he had possessed a firearm in the past. PSR at pps. 13-14.

On September 18, 2009, the jury returned a verdict of guilty as to Counts One, Two, Four, Five and Six of the superseding indictment. (Doc. # 121). The court directed a verdict of not guilty

on Count Three. (Doc. # 112).

On January 27, 2010, Petitioner's sentencing hearing was held. Based upon the trial testimony and evidence, Petitioner was held accountable for 908.55 grams of crack cocaine and 13,996.02 grams of powder cocaine, resulting in a base offense level of 34. PSR at p. 27; SOR at p. 1. Petitioner's base level was increased by three levels for victim-related adjustments and by two levels for obstruction of justice. PSR at p. 27. His total offense level was calculated at 39. PSR at p. 28. Petitioner's criminal record established a criminal history category of VI. PSR at pps. 16-24. Petitioner faced a statutory term of imprisonment of twenty years to life. In addition, his conviction on Count Five required a minimum consecutive term of five years. His guideline range, based upon a total offense level of 39 and a criminal history score of VI, was 360 months to life. At his January 27, 2010 sentencing hearing, Petitioner was sentenced to a total aggregate sentence of 420 months. (Doc. # 145). This consisted of 360 months as to Counts One, Two and Four, and 120 months on Count Six, to run concurrently. (Doc. # 145). The Court imposed an additional term of sixty months, as mandated by 18 U.S.C. § 924©, on Count Five, to run consecutively, for a total aggregate sentence of 420 months, to be followed by a ten-year period of supervised release (consisting of 10 years as to each of Counts 1, 2, and 4; 5 years as to Count 5, and 3 years as to Count 6, all such terms to run concurrently). (Doc. # 145). Judgment was entered on February 19, 2012. Id.

Petitioner filed a timely notice of appeal. (Doc. # 141). On appeal, Petitioner contended that certain Fed.R.Evid. 404(b) evidence was improperly admitted at trial and also raised three sentencing issues. See United States v. Mitchum, 418 Fed. Appx. 220 (4th Cir.2011) (unpublished). Petitioner filed a *pro se* brief raising additional claims. On March 21, 2011, the United States Court of Appeals for the Fourth Circuit issued an opinion affirming defendant's conviction and sentence. (Docs. # 158-159).

Thereafter, on June 19, 2012, Petitioner, proceeding pro se, filed the current motion under 28 U.S.C. § 2255 asserting three grounds for relief. (Doc. # 161). On July 17, 2012, the Government filed a motion for summary judgment and a supporting memorandum in opposition to Petitioner's petition. (Doc. # 166). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised by Order filed July 19, 2012 that he had thirty-four days to file any material in opposition to the Government's motion. (Doc. # 167). Petitioner filed a response on August 16, 2012. (Doc. # 169). The matter is now ripe for decision.

## 28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may file a motion in the Court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. "Generally, 28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete

4

miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's pro se motion, and finds that no hearing is necessary.

## STANDARD OF REVIEW

The Government has moved for summary judgment as to all grounds raised by Petitioner. (Doc. # 166). In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. See Celotex, 477 U.S. at 324. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete

failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 322-23 (1986).

## DISCUSSION

Petitioner asserts three grounds for relief, which are based upon a theory of ineffective assistance counsel. (Doc. # 161). Petitioner's claims set forth verbatim are as follows:

1. Counsel provided ineffective assistance by failing to move for automatic dismissal of indictment based upon Court's failure to make required "ends of justice" findings upon granting trial continuances.

2. Counsel provided ineffective assistance by failing to raise the claim in District Court and on Appeal of Count 1 of the Indictment being Duplicitous.

3. Counsel provided ineffective assistance relative to Movant's decision to plead guilty versus going to trial.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)).

Under the first prong of Strickland, we apply a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Id. (citing Strickland, 466 U.S. at 689). For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth

6

Amendment." Id. (citing Strickland at 687). The reasonableness of a lawyer's trial performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." Id. (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689).

In order to establish prejudice under Strickland's second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id.

The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." Id. at 689. As the Strickland Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

Id. at 689. (Citations omitted).

In his first ground for relief, Petitioner claims that his attorneys were ineffective for failing to move for automatic dismissal of the indictment based upon the Court's granting of continuances that pushed the date of Petitioner's trial and sentencing beyond the seventy-day limit set out in 18 U.S.C. § 3161(c)(1). Petitioner's Motion to Vacate at 5. Petitioner argues that the trial court failed to make specific findings on the record as to why the "ends of justice" warranted trial continuances.

7

Id. The Speedy Trial Act of 1974, codified as 18 U.S.C. §3161 et. seq., provides, in pertinent part:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1).

The seventy-day period does not include:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.
>
> 18 U.S.C. § 3161(h)(7)(A).

This Court granted seven continuances prior to Petitioner's trial. Six of the orders of continuance were signed and consented to by Petitioner, his counsel, and counsel for the government. See Exhibits 1a-1f, attached to the Government's Memorandum in Support of Summary Judgment. The seventh order was a text order issued by the Court on August 7, 2009, immediately after Petitioner was charged in a superseding indictment. (Doc. # 91). The Court ordered the first continuance on January 7, 2009, after a pretrial conference. The docket entry indicates Petitioner's previous attorney was relieved as counsel and a new attorney appointed. The docket report further reflects that Petitioner waived his right to a speedy trial. (Docs. # 32 and 37). The Order itself states that, based on the representations of the parties, a conflict had developed, necessitating appointment of new counsel. Exhibit 1a, attached to the Government's Memorandum in Support of Summary

Judgment. Three subsequent Orders to continue followed, filed on February 4, 2009, March 5, 2009 and April 1, 2009, all of which indicated that all parties consented to a continuance to allow for additional time to obtain or review discovery materials or evidence. Exhibits 1b-1d, attached to the Government's Memorandum in Support of Summary Judgment. Among the reasons listed in §3161(h)(7)(B), which lists certain factors to be considered by the court in making an "ends of justice" finding, is to allow counsel the reasonable time necessary for effective trial preparation. Due to the frequent appointment of new attorneys, it was necessary to allow new counsel additional time to review the case files and discovery materials. Petitioner, his counsel, and counsel for the Government all signed each of these consent Orders. Exhibits 1a-1d, attached to the Government's Memorandum in Support of Summary Judgment. Further, each Order specifically noted that an ends-of-justice balancing favored granting the continuances. On March 2, 2009, a status of counsel conference was held. (Doc. # 45). Based upon a conflict of interest, a third attorney was appointed for Petitioner. (Doc. # 52). On March 30, 2009, the Court ordered a continuance, with Petitioner's consent, to allow his new counsel additional time to review discovery. Within the same month, a conflict developed with this attorney, which necessitated a fifth continuance be granted on April 27, 2009, until the Court could determine the status of counsel. Exhibit 1e, attached to the Government's Memorandum in Support of Summary Judgment. On May 11, 2009, Petitioner was appointed yet another lawyer. (Doc. # 62). On May 28, 2009, a sixth continuance was requested by Petitioner and ordered by the Court by Order filed June 3, 2009, primarily because Petitioner had recently been appointed his fourth new attorney, and they needed additional time to confer and prepare for trial. Exhibit 1f, attached to the Government's Memorandum in Support of Summary Judgment. Again, Petitioner, his counsel, and counsel for the Government signed the Order of continuance, which

included an ends-of-justice balancing. Shortly thereafter, Petitioner once again developed a conflict with his attorney and moved the Court to appoint new counsel. (Doc. # 73). On July 1, 2009, William W. Watkins, Sr. was appointed as Petitioner's fifth counsel in this case. (Doc. # 74). Attorney Watkins remained as counsel for Petitioner throughout his trial and appeal. A seventh Order for continuance was filed by this Court by text order on August 7, 2009, after Petitioner was charged in a superseding indictment, which added a new charge. (Doc. # 91).

Petitioner specifically consented to all Orders of continuance, each of which were designed to promote his interest in obtaining a fair trial. Petitioner acknowledged in each instance that he understood his rights pursuant to the Speedy Trial Act and voluntarily waived those rights. Exhibits 1a-1f, attached to the Government's Memorandum in Support of Summary Judgment. Many of these continuances were prompted by Petitioner himself, a criminal defendant who appears to have developed conflicts and problems with several attorneys who represented him. In each Order granting a continuance, the Court adopted the representations of the parties, and the representations made at pretrial conferences in finding that the ends of justice were best served by granting a continuance and outweighed the interest of the public and the defendant in a speedy trial. The Court's ends of justice findings were proper and valid under the circumstances in this case. Petitioner's trial counsel did not act unreasonably in consenting to the Orders of continuance, particularly because the continuance in each circumstance was designed to safeguard Petitioner's right to a fair trial and to ensure that, because of the lack of continuity of counsel, each new attorney had adequate time to review the file and prepare for trial. Additionally, counsel had no basis to move to dismiss the indictment, as Petitioner's rights to a speedy trial were never violated.

Petitioner's appellate counsel similarly did not raise the speedy trial issue on appeal. Counsel

raised evidentiary issues and also three alleged sentencing errors on Petitioner's behalf. See United States v. Mitcham, 418 Fed. Appx. 220 (4th Cir.2011) (unpublished). An ineffective appellate assistance claim is governed by the same standards announced in the Strickland case. United States v. Merida, 985 F.2d 198, 202 (5th Cir.1993). In United States v. Larry V. Fox, an unpublished Fourth Circuit opinion, the Court noted ineffective assistance of appellate counsel may be demonstrated if a petitioner can "... establish that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker...." United States v. Fox, 91 F.3d 135 at *2 (4th Cir 1996) (unpublished) (internal citations omitted). In fact, an attorney may decline to appeal a non-frivolous issue if appealing a weak argument would have the effect of diluting stronger arguments on appeal. Jones v. Barnes, 463 U.S. 745, 752 (1983). Effective assistance of appellate counsel does not require the presentation of frivolous issues. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir.2000) (en banc).

After careful review and consideration, the Court concludes that Petitioner's trial and appellate counsels' performances were professional and reasonable under Strickland standards. His claims of ineffective assistance fail to satisfy either prong of the Strickland analysis and are without sufficient legal merit.

Petitioner's second claim is that his trial counsel was ineffective for failing to raise the claim that Count One of the indictment was duplicitous. Petitioner argues that Count One of the superseding indictment, the conspiracy count, was duplicitous, claiming the count charges several distinct offenses. Motion to Vacate at 6. Count One charged an agreement between Petitioner and others to possess and distribute three illegal substances: crack cocaine, cocaine and marijuana. Duplicity is the joining in a single count two or more distinct offenses. United States v. Burns, 990

F.2d 1426. 1438 (4th Cir. 1993). A duplicitous indictment is one that charges separate offenses in a single count. United States v. Adesida, 129 F.3d 846, 849 (6th Cir. 1997). In the case at bar, merely because the conspiracy count alleged the possession and distribution of three different controlled substances did not render the count duplicitous— it was the conspiracy itself that was the crime. United States v. Dale, 178 F.3d 429, 432 (6th Cir.1999).

In United States v. Dale, the Sixth Circuit Court of Appeals dealt with the same issue Petitioner now asserts. There, the defendant maintained that the court should have dismissed the drug conspiracy count in his indictment because the count included both crack and marijuana. Dale at 431. In finding no error, the Sixth Circuit stated, "It has been clear since Braverman v. United States, 317 U.S. 49 (1942), that the allegation in a single count of a conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy itself is the crime." Dale at 431. The court noted specifically that a single conspiracy may have as its objective the distribution of two different drugs without rendering it duplicitous. Dale at 431. The Sixth Circuit reiterated its holding in United States v. Cromer, a 2011 unpublished case. United States v. Cromer, 436 Fed. Appx 490, 493(6th Cir.2011). In Cromer, the defendant claimed the indictment in which he was charged was duplicitous because it alleged a conspiracy "to possess with intent to distribute methamphetimine" and also to "distribute metamphetamine." The defendant claimed his indictment charged two separate conspiracy offenses. The Sixth Circuit noted a distinction between means and elements, stating it is not duplicitous to allege in one count that multiple means were used to commit a single offense. Cromer at 493. The court determined that the indictment was not duplicitous, as it charged the defendant with a single crime, a single violation of 21 U.S.C. §846. The fact that it alleged different objects of the conspiracy, to possess and also to distribute, did not render it duplicitous. Cromer at

12

494. In another Sixth Circuit case, United States v. Campbell, et.al., 279 F.3d 392, 398 (6th Cir. 2002), one of the defendants argued the conspiracy count in the indictment violated his Sixth Amendment rights because it was duplicitous. The indictment in this case, as in Petitioner's indictment, charged a conspiracy to distribute cocaine, crack cocaine and marijuana. The court reaffirmed that a single conspiracy may have as its objective the distribution of multiple different drugs without rendering it duplicitous. Campbell at 398.

In Petitioner's case, he was properly charged in Count One with a violation of 21 U.S.C. §846, conspiracy to possess with intent to distribute and to distribute three controlled substances. The only crime charged in Count One was conspiracy. The Court cannot conclude that Petitioner's trial counsel had a basis to object or to move to dismiss the indictment. To do so would have been a frivolous exercise.

Finally, in Petitioner's third ground for relief, he asserts that Counsel provided ineffective assistance relative to his decision to go to trial versus plead guilty. Specifically, Petitioner asserts that the evidence against him was overwhelming and that instead of advising him that he could plead guilty and receive a lesser sentence (due to acceptance of responsibility reduction), that counsel failed to engage in meaningful discussions with him.

To prevail on this claim of ineffective assistance, Mitcham must show, under the test enunciated in Strickland, that his attorney's performance fell below an objective standard of reasonableness, and that Petitioner was prejudiced by his counsel's conduct. Id. at 694. If Petitioner was claiming ineffective assistance of counsel in the context of a guilty plea, he would have to show that "… there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted in going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The

13

prejudice inquiry focuses on whether counsel's performance affected the outcome of the plea process. Id. at 59. Although Petitioner is complaining about the opposite situation — that his counsel's ineffective performance caused him to proceed to trial instead of negotiating a guilty plea — courts have applied the same Strickland/Hill test in that circumstance.

Two recent Supreme Court opinions discussed similar issues. On March 21, 2012, the Supreme Court announced its decisions in Lafler v. Cooper, 132 S.Ct. 1376 (2012) and Missouri v. Frye, 132 S. Ct. 1399 (2012). In Lafler v. Cooper, the defendant claimed he was prejudiced by his counsel's advice that he should reject the prosecution's formal plea offer and stand trial. The Court found that where a plea offer is rejected due to counsel's advice, the Strickland prejudice test requires a defendant to show that there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. Id. at 1385. In Missouri v. Frye, 132 S. Ct. 1399 (2012), the defendant claimed ineffective assistance of counsel when his attorney failed to communicate to him the terms of a formal plea offer from the prosecution. The Frye court held that defense counsel has a duty to convey formal plea offers that may be favorable to the accused; however, to show prejudice, a defendant must demonstrate a reasonable probability that he would have accepted a guilty plea and that the trial court would have accepted it. Id. at 1402–03.

The Government asserts that the instant case is distinguishable from both Lafler v. Cooper and Missouri v. Frye, as Petitioner does not contend his trial attorney, William W. Watkins, advised

14

him to reject the government's plea offer, nor does he claim his lawyer failed to convey the terms of a formal plea offer. Instead, Petitioner asserts that counsel failed to engage in "meaningful discussions" with him regarding the government's proposed plea agreement. Now Petitioner admits "[t]he evidence against [him] was overwhelming," and he blames his lawyer for not advising him to plead guilty and receive a lesser sentence. Motion to Vacate at 8. The Government argues that the assertion that trial counsel did not engage in meaningful plea discussions with Petitioner is without merit as it asserts that trial counsel negotiated a beneficial plea for Petitioner and spent hours conferring with Petitioner and explaining the consequences and sentencing exposure if he went to trial. However, despite these efforts, Petitioner insisted upon exercising his right to trial and proceeded against his attorney's advice.

In his affidavit, Attorney Watkins states that at the time of his appointment, he met with Petitioner's previous attorney, and was advised that the government had made a plea offer and Petitioner had rejected it.[1] Exhibit 2, attached to the Government's Memorandum in support of summary judgment, Watkins Affidavit at p. 2. Attorney Watkins confirmed with the prosecutor the details of the plea offer, then met with Petitioner for an extended period, on July 13, 2009, reviewing the evidence, Petitioner's sentencing exposure, and the evidentiary problems with going to trial. Watkins advised Petitioner to plead guilty pursuant to the plea agreement. Exhibit 2, attached to the Government's Memorandum in support of summary judgment, Watkins Affidavit at p. 2. After Petitioner rejected the advice to enter a guilty plea, Attorney Watkins met with him again on July 27, 2009, in a meeting lasting over two hours. At this time, among other things, Attorney Watkins

---

[1] Again, Attorney Watkins was appointed to represent Petitioner on July 1, 2009, and was the fifth lawyer to represent Petitioner during the pendency of this action.

told Petitioner he estimated he could receive a sentence of fifteen years if he pled guilty, and possibly a downward departure for assisting the government by providing information. Petitioner again refused to consider a plea to the firearms count, which was a required provision in the plea agreement. Exhibit 2, attached to the Government's Memorandum in support of summary judgment, Watkins Affidavit at p. 3. Attorney Watkins met again with Petitioner, after his arraignment on the superseding indictment. Exhibit 2, attached to the Government's Memorandum in support of summary judgment, Watkins Affidavit at p. 4. Subsequently, Watkins and Petitioner met together with Assistant U.S. Attorney Rose Mary Parham and an FBI agent to discuss a guilty plea to the superceding indictment. At this meeting, the prosecutor recounted to Petitioner the evidence against him, and confirmed that he could receive a fifteen-year sentence if he pled guilty pursuant to the proposed plea agreement, which included pleading guilty to a firearms count.[2] Petitioner refused the plea offer, stating he would not plead to the gun charge, wanted a sentence of ten years or would go to trial. Exhibit 2, attached to the Government's Memorandum in support of summary judgment, Watkins Affidavit at p. 4. Petitioner exercised his right to a jury trial, was convicted and received a total aggregate sentence of 420 months.[3]

Former Assistant U.S. Attorney (AUSA) Parham, who prosecuted Petitioner's case, has also submitted an affidavit, attached as Exhibit 3 to the Government's memorandum in support of summary judgment. Attorney Parham corroborates Watkin's recollection of their meeting with

---

[2] The Court notes there is some discrepancy as to the date of this meeting with the prosecutor, or possibly some question as to whether there was more than one meeting.

[3] At trial, Petitioner testified in his own defense, against his counsel's advise, and admitted to owning a firearm, which was the crux of the crime charged in Count Five. Exhibit 2, attached to the Government's memorandum in support of summary judgment, Watkins Affidavit at pps. 4-5.

Petitioner, recalling they discussed and explained the government's proposed plea agreement and offer of a sentence of fifteen years. Exhibit 3, attached to the Government's memorandum in support of summary judgment, Parham Affidavit at 1. AUSA Parham told Petitioner that if he did not accept the proposed plea offer, she would supercede his indictment with additional charges. Exhibit 3, attached to the Government's memorandum in support of summary judgment, Parham Affidavit at p. 1. Parham confirms that she heard Attorney Watkins explain the charges, the possible penalties, the government's burden of proof, and the plea offer to Petitioner, who stated that he would "think about the offer." Exhibit 3, attached to the Government's memorandum in support of summary judgment, Parham Affidavit at 1. When Petitioner subsequently rejected the government's plea agreement, the prosecutor superseded the indictment adding a conspiracy count, as she had told Petitioner she would. Petitioner now says, in hindsight, that if he had known he could "plead guilty and receive a lesser sentence (due to acceptance of responsibility)," he would have done so. Petitioner Motion to Vacate at 8. However, it appears from the two submitted affidavits that Petitioner knew what his options were with regard to a guilty plea, and was emphatically told by both his counsel and the Assistant United States Attorney how beneficial a guilty plea would be for him in light of the overwhelming evidence against him and the lengthy sentencing consequences. Petitioner, being fully advised, made his own decision not to plead guilty. Petitioner makes no showing that his attorney failed to communicate the terms of the offer or gave him erroneous advice. On the contrary, Petitioner's attorney arranged a meeting with the AUSA, so Petitioner could hear the offer directly from the Government. Further, other than pursuant to provisions in a plea agreement, Petitioner's counsel could not have assured him he would be credited with a reduction for acceptance of responsibility, as such decrease in offense level does not automatically accompany a guilty plea. As set out in Application Note 1(A) to U.S.S.G. §3E1.1, an appropriate consideration

in determining whether a defendant qualifies for the acceptance of responsibility reduction includes "... truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct...." Petitioner's allegation that his trial counsel failed to have any meaningful discussions with him is unsupported and he has failed to make any showing that his attorney's representation fell below an objective standard of reasonableness or that his counsel's performance affected the outcome of the plea process. In contrast, Attorney Watkins' affidavit about his lengthy meetings and discussions with Petitioner, in particular with regard to the proposed plea agreement, is corroborated by the affidavit submitted by AUSA Parham. It was Petitioner's own decision that affected the outcome of the plea process.[4]

This Court has carefully considered each of Petitioner's grounds for relief. As previously

---

[4]The Government notes the case of United States v. Evans, 429 Fed.Appx. 213 (4th Cir. 2011) (unpublished), wherein the defendant filed a § 2255 petition alleging ineffective assistance of counsel for failing to advise the defendant not to enter into a plea agreement and failing to explain the terms of the plea agreement. Id. at 214. In that case, the Court gave great weight to trial counsel's affidavit, which essentially stated that trial counsel advised the defendant to take the plea agreement and loosely outlined the applicable Sentencing Guidelines, but the Court also noted that other evidence presented did not establish that the attorney actually explained the plea offer or the consequences of going to trial. Id. at 214–15. In denying the § 2255 petition, the district court emphasized that the only evidence produced by the defendant was his own "self-serving affidavit" and that of his spouse. Id. at 215. On appeal, the Fourth Circuit found that the district court failed to make a necessary credibility determination, as the affidavits of the defendant and his wife contradicted those of the attorney and no corroborating evidence supported the attorney's affidavit. Id.
      The Court finds this case distinguishable from Evans. In the instant case, Petitioner's contention that Attorney Watkins failed to engage in meaningful plea discussions with him is unsupported and self-serving. Attorney Watkins' sworn statement reflects that he did, in fact, engage in lengthy discussions with his client, recounts the specific dates of the meetings, and what was discussed, including the benefits of the plea agreement and the lengthy potential sentencing exposure if convicted at trial. His recollections and statements are corroborated by AUSA Parham's affidavit, with regard to her presence during one conversation where Petitioner received the details of the plea agreement and what was likely to happen if he did not plead guilty. These facts are readily distinguishable from those in Evans, where there was no evidence corroborating the attorney's claim that he had explained the plea offer to the defendant.

noted, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)). This Court is not sufficiently persuaded that Petitioner has satisfied either of the Strickland prongs in relation to any of his asserted grounds for relief. In each instance Petitioner has made an assertion that counsel has failed to do something that Petitioner feels he should have done, but he has not shown that counsel's performance fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED** (Doc. # 161) and the Government's motion for summary judgment is **GRANTED** (Doc. # 166). This action is hereby **DISMISSED**.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised herein. Petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.　　　　　　　　　　　s/Terry L. Wooten
　　　　　　　　　　　　　　　　　　　　　　　　TERRY L. WOOTEN
September 28, 2012　　　　　　　　　　　　United States District Judge
Florence, SC